**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**


| | | |
|---|---|---|
| **United States of America,** | ) | **CASE NOS. 12 MC 24; 12 MC 25; 12** |
| | ) | **MC 26; 12 MC 27** |
| | ) | |
| **Petitioner,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **Eaton Corporation,** *et al.*, | ) | <u>**Memorandum of Opinion and Order**</u> |
| | ) | |
| **Respondents**. | ) | |


The government filed the pending Petition to Enforce Internal Revenue Summons in

Case No. 12 MC 24 on Respondent "Eaton Corporation and Includible Subsidiaries"

(hereinafter Eaton) on March 13, 2012.  The summons was issued by Michael Badij, an agent

of the Internal Revenue Service (IRS), on John Mitchell, an officer of Eaton, on November

28, 2011, with a specified response date of December 13, 2011, in connection with the IRS's

investigation into the federal income tax liabilities of Eaton for the taxable years 2005 and

2006.  The case was consolidated with three other summons enforcement actions filed in this

district against Eaton relating to additional summonses issued on Eaton by the IRS in

connection with the same investigation, Case Nos. 12 MC 25, 12 MC 26, and 12 MC 27.

1

Case Nos. 12 MC 26 and 12 MC 27 seek to enforce additional summonses issued by the IRS

on John Mitchell on November 28, 2011; and Case No. 12 MC 25 seeks to enforce a

summons issued on Mark McGuire, Eaton's Executive Vice President and General Counsel

on December 16, 2012, with a specified response date of January 20, 2012.

Eaton opposes each of the IRS's summonses.  For the reasons discussed below, the

government's petition for enforcement of the summons in Case No. 12 MC 24 is granted, but

the government's petitions for enforcement of the summonses in Case Nos. 12 MC 25, 12 MC

26, and 12 MC 27 are denied.

**Background**

The IRS is examining the appropriateness of Eaton's federal income tax liability for

the taxable years 2005 and 2006.  The IRS's examination of Eaton's tax liability has focused

primarily on issues concerning the correct transfer pricing for electrical products ("Breaker

Products") manufactured by Eaton facilities in Puerto Rico and the Dominican Republic and

sold to Eaton's U.S. operations.  The examination of Eaton's 2005 and 2006 tax returns has

lasted more than four years, and Eaton asserts that the examination has been extensive in

scope.  In particular, Eaton asserts that its employees and outside advisors have spent more

than 30,000 hours addressing various information requests issued to Eaton by the IRS in

connection with the examination.  Eaton asserts that it has responded to more than 240

Information Document Requests (the IRS's standard means of communicating written

requests for information) by providing written, narrative answers to the IRS's information

document requests and producing more than 10,000 pages of documents and "massive

amounts of electronic information."  In addition, in connection with its investigation, the IRS

2

has conducted a total of 12 site visits to Eaton facilities in the United States, Puerto Rico, and the Dominican Republic, two full days of transcribed interviews each with Eaton's Senior Vice President-Taxes and its Vice President-Federal Tax Strategy, interviews of "multiple third parties engaged in business with Eaton's relevant operations, and eight days of transcribed interviews with a former employee of Eaton's Tax Department, John Semanchik (and in addition is currently seeking an unspecified number of additional interview days with Mr. Semanchik in a separate enforcement proceeding recently filed in the Western District of Pennsylvania).[1]   The IRS's pending petitions seek to compel Eaton to produce various documents and information Eaton has withheld from production in connection with the IRS's investigation.

### Legal Standard

In order to ensure the proper determination of tax liability, Congress "has endowed the IRS with expansive information-gathering authority."  *United States v. Monumental Life Ins. Co.*, 440 F.3d 729, 732 (6th Cir. 2006), citing *United States v. Arthur Young & Co.*, 465 U.S. 805, 816 (1984).  Section 7602 of the Internal Revenue Code, 26 U.S.C. § 7602, is the "centerpiece of that congressional design."  *Id.*  at 733.  Under Section 7602, the Commissioner of the IRS is authorized, "[f]or the purpose of ascertaining the correctness of

---

[1]  Eaton also asserts that, "in practical terms," the 2005 and 2006 examination ended on December 19, 2011 (just four business days after the summons response date in Case Nos. 24, 26, and 27), when the IRS issued Eaton a Notice of Deficiency asserting tax deficiencies related to Eaton's 2005 and 2006 tax years.  Eaton contends the IRS was aware when it served its summonses that Eaton intended to challenge in court any adjustments made by the IRS to its transfer pricing.  In fact, on February 29, 2012, Eaton filed a petition with the United States Tax Court challenging the IRS's Notice of Deficiency, *Eaton Corp. v. Commissioner*, Case No. 5576-12 (T.C. filed February 29, 2012).

3

any return . . ., [t]o examine any books, papers, records, or other data which may be relevant

or material to such inquiry" and "[t]o summon the person liable for tax or required to perform

the act, or any officer or employee of such person . . . to appear before the Secretary at a time

and place named in the summons and to produce such books, papers, records, or other data,

and to give such testimony, under oath, as may be relevant or material of such inquiry."  26

U.S.C. § 7602(a)(1) and (2).

The courts are authorized to enforce this summons power.   "Proceedings seeking

enforcement of an IRS summons are intended to be summary in nature."  *Monumental Life*,

440 F.3d at 736.  The decision of whether to enforce an IRS summons is governed by the

analytical framework set forth by the Supreme Court in *United States v. Powell*, 379 U.S. 48

(1964).  Under this analytical framework, the government must first establish a *prima facie*

case for enforcement by demonstrating that:  (1) the investigation has a legitimate purpose;

(2) the information summoned is relevant to that purpose; (3) the documents sought are not

already in the IRS's possession; and (4) the procedural steps required by the tax code have

been followed.  "The requisite showing is generally made by the submission of the affidavit

of the agent who issued the summons and who is seeking enforcement."  *Monumental Life*,

440 F.3d at 733.

Once the government has made this *prima facie* showing, the burden shifts to the party

being summoned to either disprove the elements of the *prima facie* case or "demonstrate that

judicial enforcement of the summons would otherwise constitute an abuse of the court's

process."  *Id*.  In this regard, the Supreme Court has held that the obligation imposed by a tax

summons remains "subject to the traditional privileges and limitations," including the

4

attorney-client privilege and the work product doctrine.  *Upjohn Co. v. United States*, 449

U.S. 383, 398 (1981).  Further, the Internal Revenue Code, 26 U.S.C. § 7525 ("IRC § 7525"),

establishes a third privilege, the so-called "tax advisor's" or "tax practitioner's," privilege,

which may limit the IRS's right to obtain information and documents by way of a summons.

IRC § 7525 extends "the same common law protections of confidentiality which apply to a

communication between a taxpayer and an attorney . . . to a communication between a

taxpayer and any federally authorized tax practitioner."

The party asserting a privilege bears the burden of establishing the existence of the

privilege.  *Cooey v. Strickland*, 26 F.R.D. 643, 649 (S.D. Ohio 2010).

**Discussion**

IRS agent Badij asserts in affidavits in connection with each of the IRS's enforcement

petitions that the information summonsed by the IRS is necessary in order to properly

investigate Eaton's 2005 and 2006 tax liability and that the IRS does not otherwise possess

the materials sought.

*12 MC 24*

The IRS summons at issue in Case No. 12 MC 24 seeks the following information:

As required by 26 C.F.R. 1.662-6(d)(2)(iii)(C) provide the background
documents behind the functional analysis performed for the Advanced Pricing
Agreements ("APAs") relevant to the exam years 2005 and 2006.  Included is
the request to provide the following:

1.  With regard to the functional analysis performed for the APA relating to the
2005 exam year, provide the questions each Eaton employee interviewed was
asked during the interview and the responses of each Eaton employee to those
questions in the form of all original notes taken by the interviewers for the

5

meeting that occurred in Pittsburgh on February 15, 2002.  (Note – submit only a copy of all of the original notes taken by the interviewers for the meeting that occurred in Pittsburgh on February 15, 2002.)

2.  With regard to the functional analysis performed for the APA relating to the 2006 exam year, provide the questions each Eaton employee interviewed was asked during the interview and the responses of each Eaton employee to these questions in the form of all original notes taken by the interviewers for the meetings that occurred in Pittsburgh on March 7, 2005 and February 27, 2006. (Note- submit only a copy of all of the original notes taken by the interviewers – not a compiled answer by all interviewers or tax department personnel).

Although the IRS does not elucidate the nature of this request in its memorandum in support of its petition, Eaton explains in its opposition brief that Eaton applied for and obtained "Advance Pricing Agreements" (APAs) – which are binding contracts with the IRS – relating to the transfer pricing of its Breaker Products for 2005 and 2006 and other tax years.  Eaton asserts that its attorneys and tax advisors conducted the interviews referenced in the 12 MC 24 summons (on February 12, 2002, March 7, 2005 and February 27, 2006) for the purpose of obtaining factual information needed to advise Eaton with respect to its defense of its transfer pricing and preparation of applications for APAs for the 2001 through 2010 tax years.

Eaton refused to provide the interview notes requested in the summons, responding to the IRS that:

All of the original notes taken by the interviews in Pittsburgh on February 12, 2002, March 7, 2005 and February 27, 2006, to the extent currently in Eaton's possession or control, are privileged and confidential in nature and protected subject to attorney/client, IRC 7525 and/or work product privileges.  All other original notes taken by interviewers at other meetings not identified in this summons are privileged and confidential, and protected as well.

6

The IRS asserts that Eaton has not met its burden of demonstrating that enforcement of the summons would be an abuse of the court's process; specifically, the IRS contends Eaton has not substantiated its objections that the materials summonsed are subject to the attorney-client privilege, the "tax practitioner's" privilege, and the work product doctrine. The government argues:

> Through the subject summons, the IRS is seeking all original questions and responses by way of notes taken by interviewers or Eaton employees on February 15, 2002, March 7, 2005, and February 27, 2006, relating to the functional analysis performed for Advanced Pricing Agreements for 2005 and 2006. In response to the summons, Respondents provided a document refusing to comply with the summons by producing the requested notes claiming attorney/client privilege, 26 U.S.C. § 7525 accountant privilege, and work product privilege. (See Ex. 3 to Petition.) Other than professing that the notes are subject to one of these privileges, the Respondents have not met their burden of establishing that the notes relate to a request for legal/tax advisors and not just employees of Respondent Eaton. Furthermore, other than conclusory statements that the notes are subject to the work product privilege, Respondents provided no support that they were prepared in anticipation of litigation, thus failing to satisfy their burden in this regard. There is also no evidence that these notes have not been voluntarily shared with third parties, which would be a waiver of all the privileges which Respondents claim.
>
> At a minimum, the Respondents should be required to provide the notes to the Court for an *in camera* review to determine whether the records are subject to any of the privileges asserted by the Respondents.

(Corrected Mem. at 9.)

As Eaton acknowledges in its opposition briefs, Eaton has not provided the IRS with a document-by-document privilege log with respect to the summonsed interview notes (and, further, Eaton does not explain in its briefs why it did not provide such a privilege log). In support of its position that the summonsed documents are privileged, Eaton relies exclusively on its initial objection to the IRS's summons, set out above, and a declaration of Patricia

Hennis, Eaton's Vice President-Federal Tax Strategy, that Eaton submitted with its opposition

to the government's enforcement action.  Hennis states in her declaration that:

> 6.  The interviews [that were conducted on February 15, 2002, March 7, 2005,
> and February 27, 2006] were conducted for the purpose of developing the
> factual background which Eaton's legal and tax advisors relied upon in
> providing legal and tax advice to Eaton and in developing the factual and legal
> positions Eaton asserted in adversarial administrative proceedings with the
> IRS.

> 7.  These adversarial administrative proceedings focused on transfer pricing of
> electrical products ("Breaker Products") manufactured in Eaton's Puerto Rican
> and the Dominican Republic facilities ("Puerto Rican Operations") and sold to
> Eaton's U.S. subsidiaries and Eaton's "APAs," which governed the transfer
> prices of Breaker Products, for the 2001 through 2010 tax years.

> 8.  The following external legal and tax advisors participated in some of all of
> the Interviews:

> a.  Joseph Geoke, an attorney with Mayer Brown LLP, advised Eaton with
> respect to its application for Eaton's renewal APA (covering years 2006
> through 2010) and the 2005 and 2006 Examination;

> b.  Joel V. Williamson, an attorney with Mayer Brown LLP, advised Eaton
> with respect to its application for Eaton's renewal APA (covering the years
> 2006 through 2010) and the 2005 and 2006 Examination;

> c.  Richard Barrett and his colleagues at PricewaterhouseCoopers, who
> functioned as Eaton's primary external tax advisors for transfer-pricing matters
> and advised Eaton with respect to the applications for and negotiations and
> administration of APAs;

> 9.  The following internal tax advisors, including myself, participated in some
> or all of the Interviews:

> a.  John Mitchell, who at the time of the interviews held the title of Vice
> President-Taxes and served as the head of Eaton's Tax Department,
> responsible for Eaton's global tax compliance (Mr. Mitchell now holds the title
> Senior Vice President- Taxes);

> b.  Cliff Simonson, Manager-Federal Tax Audits, a member of Eaton's Tax

Department, who has been responsible for the day-to-day management of IRS examinations of Eaton since 1995 and has participated in the applications for and negotiation and administration of the APAs.

c.  John Semanchik, Tax Manager, a member of Eaton's Tax Department until January 2009, had been responsible for overseeing Eaton's compliance with the APAs;

10.  The individuals identified in paragraphs 8 and 9 above conducted the relevant interviews of Eaton employees.  No third parties were interviewed or otherwise attended the interviews.

(Hennis Dec.)

Eaton asserts in its briefs that "[t]he interview notes prepared by Eaton's outside attorneys fall squarely within the attorney-client privilege.  Mr. Goeke and Mr. Williamson of Mayer Brown participated in interviews of Eaton employees in Pittsburgh on February 15, 2002 and February 27, 2006, respectively, for the express purpose of gathering factual information, which they considered in giving Eaton legal advise regarding its APA applications and IRS examination."  (Doc. 12, at 7.)  In addition, Eaton asserts that the interview notes are protected under the tax advisor's privilege established by IRC § 7525(a). Eaton asserts:

Mr. Goeke and Mr. Williamson functioned not only as lawyers but also as tax advisors to Eaton.  They worked cooperatively with other external tax advisors, specifically Richard Barrett and his colleagues at PwC.  Mr. Goeke, Mr. Williamson and Mr. Barett all collaborated with Eaton's internal tax advisors, including John Mitchell, Patricia Hennis and Cliffton Simonson in Eaton's Tax Department.

Combinations of Eaton's internal and external tax advisors conducted interviews of Eaton employees in Pittsburgh on the three dates identified by the Petitioner for the express purpose of gathering factual information, which they considered in providing Eaton tax advise regarding Eaton's APA applications.

9

Finally, Eaton asserts that the interview notes are protected by the work product doctrine because the "interviews were conducted by Eaton's outside attorneys and tax advisors, as well as members of Eaton's Tax Department, for the specific purpose of developing facts to support tax and legal positions Eaton presented in adversarial administrative proceedings with the IRS."

The government contends Eaton has not met its burden of demonstrating that the withheld documents are privileged because Eaton did not provide a privilege log and Hennis's declaration does not provide a detailed description of the documents withheld.[2]

The Court agrees with this contention of the IRS.  Fed. R. Civ. P. 26(b)(5) provides that a party withholding information based on a claim of privilege must:  "(i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  Even assuming that Hennis's statements in her declaration are true (that the interview notes the IRS seeks in the summons all reflect information pertaining to interviews conducted by Eaton's legal and tax advisors on February 15, 2002, March 7, 2005, and February 27, 2006 for the purpose of gathering the factual information considered in providing Eaton tax and legal advice

---

[2]
The government also argues that, even if Eaton provided sufficient information to substantiate the privileges, Eaton still has failed to sustain its burden of demonstrating that the privileges apply because: (1) factual content of the interview notes is not protected; (2) Eaton waived the privileges by "choosing to conduct the employee interviews together, with accountant and tax representatives present"; Eaton has failed to show that the interview notes were generated "in anticipation of litigation"; and (4) Eaton impliedly waived the privileges.

10

regarding Eaton's APA applications), the Court does not find the declaration alone sufficient

to satisfy Rule 26 because the declaration does not describe the nature of the documents Eaton

has withheld in such a manner that would enable the government to assess Eaton's asserted

claims of privilege.

As Eaton recognizes, usually, assertions of privilege are accompanied by a document-

by- document privilege log identifying the date, type, subject, author, addressees and other

recipients for each document withheld and as to which a privilege is asserted.  *See, e.g.*,

*Lincoln Electric Co. v. National Standard LLC*, 2012 WL 1424777, at *1 (N.D. Ohio April

24, 2012) ("The log information includes the sender, recipient and date of each document

along with a brief description and indication of what is being asserted.  This information is

sufficient to satisfy the requirements of a privilege log absent some specific indication that

necessary information has been withheld or is inaccurate.").  Eaton has not provided the

government with a privilege log in connection with the summons at issue in this case and

does not explain why it has not provided a privilege log as to this particular summons.[3]

Instead, Eaton asserts in its briefs that a privilege log is not required in this case, arguing that:

> Courts . . . have recognized that privilege logs are not required when the
> privileged nature of the documents at issue is readily apparent.  In 1 Stephen S.
> Gensler, *Federal Rules of Civil Procedure, Rules and Commentary*, Rule 26
> (West 2012 Ed.), it is noted that:
>
> > While it is true that privilege logs have become customary, it
> > must be emphasized that Rule 26(b)(5) does not require them
> > every time a privilege or work-product claim is made in the
> > context of document discovery.  What Rule 26(b)(5) requires is

---

[3]
     As discussed below, Eaton provided document-by-document privilege logs in
responding to the summonses issued by the IRS in related cases 12 MC 25 and 12 MC
27.

> that the claim be made expressly, that it identify the information
> withheld, and that the basis for the claim be set forth adequately
> for the other party to assess it. Thus, no privilege log would
> seem necessary if a party was withholding only one or a few
> items and the information required by Rule 26(b)(5) had been
> set forth otherwise, such as in the objection to the document
> request . . .
>
> *Id*. at *25. *See also Graham v. Mukasey*, 247 F.R.D. 205, 207 (D.D.C. 2008)
> ("There is no need, and the federal rules do not require a defendant, to create a
> log that describes the author, the date, the type of document, and so on, when
> the requesting party can see the information simply by looking at the . . .
> document. Graham has not explained how a log would enhance his ability to
> challenge the claims made with respect to the redacted documents, and it is not
> obvious what useful information he expects to gain from a log of partially
> redacted documents, and it is not obvious what useful information he expects
> to gain from a log of partially redacted documents"); *Clark v. Edison*, 2010
> WL 3245428, at *3 (D. Mass. August 16, 2010) ("Generally, a party does not
> need to provide information concerning the type, date, and author of a
> document where such information is obvious from the document's title.").

(Sur-Reply at 8-9.)

Eaton argues that "[a] privilege log would have provided no useful information and,

thus, was not required" in the present case because "the express terms of the summons at

issue: 1) stated that notes of interviews were sought; 2) provided the dates, locations and

purpose of the interviews; and 3) disclosed that it was Eaton employees who were

interviewed in connection with the notes" and "[i]n response, Eaton objected the request and

provided the specific privileges relied upon." (*Id.* at 9.)

The Court does not agree with Eaton. While the IRS summons identifies what

documents are sought, the summons does not indicate what responsive documents in Eaton's

possession *exist*. Furthermore, it cannot be determined from Eaton's objection and Hennis's

declaration whether there are "only one or a few items" that are being withheld on the basis of

the privilege, or, whether there are many items being withheld.  Rule 26 requires Eaton to provide the IRS with enough information about the documents withheld in order to enable the IRS to "assess the claim" of privilege.  Eaton's objection and Hennis's declaration (both generally asserting that the interview notes sought pertain to interviews conducted by Eaton's legal and tax advisors for the purpose of developing the factual background in connection with legal and tax advice rendered to Eaton in adversarial administrative proceedings with the IRS) are insufficient in this regard.

The cases Eaton cites in support of its position are both distinguishable.  In *Graham*, the defendant actually produced responsive documents, but redacted the documents and provided an explanatory sheet with each document bearing a code corresponding to the reason each document was withheld.  In this context, the court held that a privilege log was not required because the requesting party could see the information that would have been supplied on a privilege log (*i.e.*, the author, date, type of document) simply by looking at the redacted document.  Eaton did not produce any document or redacted document here.  In *Clark*, the withholding party provided a "list" of documents, which the court found "clearly suggest[ed] the nature and content of the materials."  Eaton has not provided a "list" of documents suggesting the nature and content of the materials withheld.

In sum, the Court agrees with the IRS that Eaton has failed to meet its burden of demonstrating that the summonsed materials are privileged.   Accordingly, the government's petition to enforce the IRS summons in MC 24 is granted.  Eaton must produce the summonsed documents.

*12 MC 25*

13

The summons in Case No. 12 MC 25 seeks production of twelve categories of documents.  (Gov. Ex. 2., Attachment A.)[4]  Eaton provided a written response to this summons and produced the documents requested (approximately 1500 pages) except for 61 documents, totaling 133 pages, that Eaton withheld under the attorney-client, the tax practitioner's privilege, and/or the work product doctrine.  Eaton provided the IRS with a written privilege log identifying the 61 documents withheld and stating the privileges claimed

---

[4]The summons requests the following documents:

A.  The complete tax return binder(s) and the complete APA binder(s) maintained by Mr. Semanchik . . .
B.  The complete APA backup binders maintained by Mr. Semanchik . . .
C.  The support for the tax returns for Puerto Rico included in Mr. Semanchik's files. . . .
D.  The section(s) or tab(s) regarding Mr. Semanchik's reconciliations . . .
E.  The reconciliations and supporting documents used to reconcile the VISTA data with the financial statements (channel statements) for the US mirror ledgers. . . .
F.  The reconciliations and supporting documents used to reconcile the VISTA data with the financial statements (channel statements) for the Puerto Rican plants. . . .
G.  The purchase/resale listing and supporting documents maintained by Mr. Semanchik in his files . . . .
H.  The e-mails and correspondence maintained by Mr. Semanchik in his files, including, but not limited to, e-mails and correspondence between Mr. Semanchik and KPMG as well as between Mr. Semanchik and Mr. Mitchell.
I.  The trial balances as well as other financial data . . . for the PR plants and US mirror ledgers maintained by Mr. Semanchik in his files.
J.  The reports and supporting documents prepared by KPMG that compared products on a year by year basis such as the classification of new products or the reclassification of old products.
K.  The report(s) prepared by KPMG that would list the items flagged by KPMG as questionable in the transfer price methodology/application of the transfer price methodology.
L.  The folders or binders and all related documents contained therein regarding Mr. Semanchik's meetings and trips for 2005 and 2006.

14

for each document withheld.  (Pet., Govt. Ex. 3.)  Eaton also provided – with its brief

opposing the IRS's enforcement petition – a declaration of Patricia Hennis in support of its

claims of privilege.  (Doc. 13, Ex. A.)  Hennis states in this declaration that she has reviewed

the documents on Eaton's privilege log and has confirmed that the content of the documents

is consistent with the descriptions on the log.  Further, Hennis states that she is familiar with

the authors and recipients of the documents listed on the log; she states the names and

identities of Eaton's various tax and legal advisors; and she states that the documents on the

privilege log reflect either "communications by and among Eaton's internal and external legal

and tax advisors related to requests for and/or the provision of legal advice and/or were

prepared during or in anticipation of adversarial administrative proceedings with the IRS."

(Dec., ¶ 7.)

      Despite the log, the IRS takes the position that Eaton has not sufficiently substantiated

its assertions of privilege and that its petition should be granted because Eaton has not "fully

satisfied [its] burden of proof to support the claimed privileges."  (Rep. at 1.)[5]  The IRS

contends Eaton "has failed to submit adequate proof of the elements of its asserted privileges

with respect to all but eight of the sixty-one entries on the privilege log."  (Rep. at 11.)[6]

      The IRS makes the following arguments in support of its position.  First, Hennis's

---

[5]

      The IRS contends that, at a minimum, Eaton should be required to provide the
records to the Court for an *in camera* review for the Court to determine whether the
subject materials are subject to the privileges asserted.  (IRS Mem. in Support of Petition,
at 10.)

[6]

      The IRS asserts in its reply brief that it no longer seeks to enforce the following
eight entries on the log: entry numbers 4, 10, 33, 35, and 51 through 54.

declaration "makes only conclusory statements about the privileged nature of the documents" on the log and that the "subject matter" category descriptions generally are "imprecise," "vague and generic." (*Id.*) In addition, "Ms. Hennis does not allege within her Declaration that the documents [as to which work product protection is claimed] were prepared 'in anticipation of litigation' but rather [she] refers to them as produced in connection with an 'adversarial proceeding'"; thus, Eaton has failed to demonstrate that documents fall within the work product doctrine. (Rep. at 12.) Third, Eaton has failed to demonstrate that entry numbers 50 and 56 on the privilege log are protected by the attorney-client privilege because there is no information in these entries indicating that "legal advice was sought or rendered" or that there was "no waiver of the privilege." Fourth, Eaton has failed to demonstrate that the tax practitioner's privilege applies with respect to entry numbers 8, 11, 16 through 19, 21 through 29, 32, 39, 40 through 50, and 55 through 59 because there is no information in these entries indicating that tax "advice was sought and/or rendered, and [that] no waiver of the privilege had been taken." (Rep. at 16.) Finally, with respect to entries in the log where Eaton seeks the tax practitioner privilege in addition to the attorney client privilege and the work product doctrine (entry numbers 1, 2, 20 through 32, 34, 36 through 50, 55, and 57 through 61), "there is no evidence that any of the parties were outside advisors as opposed to employees of Eaton." (Rep. at 16.)

The IRS also argues that, even if the Court determines that the documents on the log are privileged, Eaton has impliedly waived its privileges because an implied waiver arises when a taxpayer "affirmatively raises a claim that can only be effectively disproven through discovery of attorney-client communications." (*Id.* at 16-17.) The IRS contends Eaton took

16

two affirmative acts which impliedly waived its privileges;  first, during the examination of

Eaton's 2005 and 2006 tax returns, Eaton asserted that its functional analysis supported its

transfer pricing methodology; and second, Eaton contested the adjustments made by the IRS

to its tax returns by challenging the IRS's adjustments in Tax Court (and thus placed at issue

all of the documents related to its transfer pricing methodology and APA application).  (*Id*. at

19.)

   The Court finds Eaton's privilege log and the declaration of Patricia Hennis sufficient

to substantiate Eaton's assertions of privilege in 12 MC 25.  As discussed above, Fed. R. Civ.

P. 26(b)(5) provides that a party withholding information based on a claim of privilege must:

"(i) expressly make the claim; and (ii) describe the nature of the documents, communications,

or tangible things not produced or disclosed – and do so in a manner that, without revealing

information itself privileged or protected, will enable other parties to assess the claim."

Courts have found this standard satisfied where, as here, a party withholding documents on

the ground of privilege has provided the opposing party a privilege log identifying "the

Date/Time, Type, Subject, Author, Addressee(s), and Other Recipient(s) for each document to

which it asserts privilege."  *Sid Mike 99, LLC v. SunTrust Bank*, Case No. 07CV2453, 2009

WL 3255209, at *6 (W.D. Tenn. Oct. 6, 2009).  *See also Lincoln Electric Co. v. National*

*Standard LLC*, Case No. 09 CV 1886, 2012 WL 1424777, at *1 (N.D. Ohio April 24, 2012)

("The log information includes the sender, recipient and date of each document along with a

brief description and indication of what is being asserted.  This information is sufficient to

satisfy the requirements of a privilege log absent some specific indication that necessary

information has been withheld or is inaccurate.").

Unlike Eaton's response to the IRS summons in 12 MC 24, Eaton has provided a privilege log as to documents withheld that provides the information required under Fed. R. Civ. P. 26.  Eaton's privilege log contains the following information: 1) the subject matter of the documents to which a privilege has been asserted; 2) the date of the documents; 3) the document types; 4) the authors; 5) the recipients; 6) the number of pages; 7) the privileges claimed; and 8) a general description (*i.e.*, "litigation preparation," "legal/tax advice").  Eaton's privilege log contains sufficient detail to support its claims of privilege on a document-by-document basis.  Further, Eaton has supplemented its privilege log with the declaration of Hennis, who attests that each of the documents withheld reflect "communications . . . relating to requests for or the provision of legal and/or tax advice" or "work product prepared in anticipation of adversarial proceedings with the IRS . . . ."

The IRS has not set forth any persuasive reason to doubt the veracity of Hennis's assertions or privilege claims as to the documents on Eaton's privilege log.

The IRS's position that Eaton is not entitled to assert work protection on the ground that Eaton did not generate the subject documents "in anticipation of litigation" with the IRS is not persuasive.  As Eaton points out, in *United States v. Roxbury*, 457 F.3d 590 (6th Cir. 2006), the Sixth Circuit recognized that documents prepared during or before an administrative proceeding –  such as an IRS audit –  may be in anticipation of litigation and protected as work product.  The Sixth Circuit stated:

> Although not every audit is potentially the subject of litigation, a document prepared "in anticipation of dealing with the IRS" . . .  may well have been prepared in anticipation of an administrative dispute and this may constitute "litigation" within the meaning of Rule 26.

18

*Id*. at 600.  Eaton persuasively demonstrates that its "adversarial administrative proceedings" with the IRS here have not been just routine audits but, instead, have been ongoing and contentious such that documents generated by Eaton in connection with the IRS's examination of its 2005 and 2006 tax returns are aptly characterized as prepared "in anticipation of litigation."

Further, the IRS has not persuasively demonstrated that Eaton is not entitled to assert the tax practitioner's privilege on the basis that "there is no evidence that any of the parties were outside advisors as opposed to employees of Eaton."  As Eaton points out, IRC § 7525(a) defines a federally authorized tax practitioner as any individual "authorized under Federal law to practice before the Internal Revenue Service," whether the person is an outside, or in-house, tax advisor.  The court in *United States v. Textron, Inc.*, 507 F. Supp.2d 138, 148 (D.R.I. 2007), *rev'd on other grounds*, 577 F.3d 21 (1ˢᵗ Cir. 2009), found that communications by in-house tax practitioners were protected under the tax practitioner privilege.

The IRS's arguments generally challenging the level of detail provided by Eaton as to the documents Eaton has withheld also lack merit in that, as discussed above, Eaton has provided sufficient information to satisfy Rule 26 and to enable the IRS reasonably to assess Eaton's privilege claims.[7]  The Court also rejects the IRS's argument that Eaton has "impliedly waived" its privileges.  The IRS has not persuasively demonstrated that Eaton has

---

[7]
        Indeed, as noted in footnote 6 above, the IRS has withdrawn its objections as to eight of the documents on Eaton's privilege log which provided substantially similar information as is provided for the entries Eaton still challenges.

affirmatively raised claims that can only be disproven through disclosure of privileged documents.

Accordingly, the petition for enforcement of the summons in 12 MC 25 is denied, and the Court declines to exercise its discretion to review the documents on Eaton's privilege log *in camera. See, e.g, MPT, Inc. v. Marathon Labels, Inc*., Case No. 1: 04 CV 2357, 2006 WL 314435, at *8 (N.D. Ohio Feb. 9, 2006) (declining to conduct an in camera investigation absent "any reason to doubt the veracity of the privilege claims").

*12 MC 27*

The IRS summons in Case No. 12 MC 27 seeks seven items, totaling 22 pages, that "were redacted" by Eaton in responding to a formal document request from the IRS ("IDR IE-133").

IDR IE-133 contained the following request:

> Based on an interview of former Eaton employee, John Semanchik, we understand that a significant portion of his duties at Eaton consisted of work with respect to Eaton's two APAs.  As part of his work, he stated that he maintained documentation that was compiled on an annual basis and stored in his office.  Mr. Semanchik referred to each set of annual documentation as an "APA Binder," although it was not clear whether the documents were compiled and maintained in a three-ring binder, some other sort of binder, or some other filing system.  We understand that he maintained this annual documentation for the years 2001 until such time as his departure from Eaton.  Please provide copies of all of the documents contained in each such "APA Binder" . . . maintained by Mr. Semanchik on an annual basis from 2001 through his departure from Eaton.

Eaton provided a written response to IDR IE-133 and produced two binders to the IRS, consisting of a total of approximately 1,500 pages, previously maintained by Mr. Semanchik in connection with the 2005 and 2006 tax years.  Eaton withheld the seven documents from

20

production and provided the IRS with a privilege log. (Govt. Ex. B, attached to Doc. 17.)

The log, like the log Eaton provided in 12 MC 25, sets forth the following information for

each withheld document: 1) the subject matter of the document; 2) the date of the document;

3) the document type; 4) the author; 5) recipient; 6) number of pages; 7) the privileges

claimed; and 8) a general description of the document.

The IRS's summons seeks production of the seven withheld documents. The

summons states:

> The following documents were redacted from the binders provided in response
> to IDR IE-133. Provide the documents listed below:
>
> 1. E-mail and attachments from Jim Doan, Esq. to John Semanchik dated
> 11/04/2004 regarding the status of CHSA liquidation.
>
> 2. E-mail/Excel Document and attachments from Alice Smith, VP to John
> Semanchik dated 2/23/2006 regarding the Cayman Islands valuations.
>
> 3. E-mail and attachments from Lara S. White to John Semanchik dated
> 4/12/2006 regarding the Beaver CUP Analysis.
>
> 4. E-mail and attachment from Lara S. White to John Semanchik dated
> 1/12/2007 regarding Eaton's APA.
>
> 5. E-mail/Excel Document and attachments from John Semanchik to John
> Mitchell dated 5/30/2007 regarding the 2006 APA Analysis.
>
> 6. E-mail and attachments from Lara S. White to John Semanchik dated
> 1/16/2007 regarding Eaton's APA and stock options.
>
> 7. E-mail and attachments from Cliff Simonson to Andy Stelmaschuk dated
> 12/1/2006 regarding Electrical Breaker Product APA Renewal.

(Govt. Pet., Ex. 3.)

> Eaton responded to the summons that:
>
> All of the documents referenced above are protected under the Attorney-Client Privilege and/or IRC section 7525, as indicated in the Privilege Log that was attached to Eaton's response to IDR IE-133.

(*Id.*)

As in 12 MC 25, Eaton supplemented its privilege log by submitting a declaration of Patricia Hennis with its opposition brief.  (Doc. 13, Ex. 1.)  Hennis states that she has reviewed the documents on the log and has confirmed that the content of the documents is consistent with the descriptions on the log.  She states that she is familiar with the authors and recipients of the documents on the log and states that:

> 11.  The first two documents listed on the privilege log reflect communications among Eaton's legal and tax advisors relating to requests for or the provision of legal and tax advice regarding a corporate reorganization involving Eaton's Puerto Rico and Dominican Republic manufacturing facilities.
> 12.  Documents three through seven on Eaton's privilege log reflect communications among Eaton's internal and external tax advisors, relating to requests for or the provision of tax advice regarding the APAs.

(*Id.*, ¶¶ 11, 12.)

The IRS contends Eaton has failed to adequately substantiate its claims of privilege as to all but the first document on Eaton's privilege log.[8]  The IRS argues that Hennis's declaration is conclusory, that Eaton has failed to demonstrate that the tax practitioner's

---

[8]
The IRS asserts in its reply brief that it does not seek to compel production of the first item on the log, the e-mail from Jim Doan to John Semanchik.

22

privilege applies to the second through seventh entries, and that Eaton has impliedly waived its tax practitioner privilege by putting the methodology and computation of its transfer pricing at issue during the audit of its 2005 and 2006 tax returns.

The IRS's arguments are not persuasive.  As discussed above in connection with the summons in 12 MC 25, Eaton's privilege log and the Hennis's statements provide sufficient detail to support Eaton's claims of privilege under Rule 26.  Despite this sufficient information, the IRS has set forth no reason to doubt the veracity of Hennis's assertions that items 2 through 7 of Eaton's privilege log relate to requests for or the provision of tax or legal advice from Eaton's tax and legal advisors.

Furthermore, for the same reasons discussed above in connection with 12 MC 25, the IRS's other arguments (that the tax practitioner's privilege does not apply because Eaton has effected an implied waiver of the privilege and because no outside tax advisor was involved) are not persuasive.

The petition for enforcement of the summons in 12 CV 27 is denied.

*12 MC 26*

The summons at issue in 12 MC 26 seeks to compel Eaton to produce performance evaluations, from 2001 through 2006, for John Semanchik, a former employee of Eaton's Tax Department.[9]  Eaton provided a written response to the summons, stating:

[9]Specifically, the summons states:

Provide the following performance evaluations for John Semanchik from 2001 through 2006:

1.  Mid-Year Progress Check (prepared by the Evaluation Manager) for

23

> The documents requested . . . implicate privacy concerns and are protected
> under federal case law.  The IRS has not made an adequate showing of
> relevance to the issues under examination to overcome these privacy concerns.

(Pet., Govt. Ex. 3.)

The IRS seeks to enforce the summons, arguing that Semanchik's performance

evaluations are relevant to its investigation.  Agent Badij asserts in his affidavit in support of

the IRS's summons that:

> [T]he summonsed documents are relevant to my investigation because John
> Semanchik, the former employee of the taxpayer that is the subject of the
> summonsed documents, had extensive knowledge of the taxpayer's offshore
> operations and a key role in the implementation and interpretation of two
> Advanced Pricing Agreements . . . that covered the two years at issue in my
> examination.  Mr. Semanchik's evaluations likely contain information that
> sheds light on the taxpayer's pricing methodology as reported on the tax
> returns as well as the taxpayer's interpretation of the APA transfer pricing
> methodology.

(Pet., Ex. 1, ¶ 9.)

Mr. Semanchik worked for Eaton for thirty-four years until he left his employment at

Eaton in January 2009 due to the elimination of his position as part of a restructuring and

---

each respective year;
2.  Self Evaluation for each respective year;
3.  Performance Evaluation (prepared by the Evaluation Manager) for
each respective year.

The summons does not seek copies of the following evaluations:

The 2005 Performance Evaluation . . . dated March 9, 2006
The 2006 Mid-Year Progress Check . . . printed July 11, 2009
The 2006 Self Evaluation printed November 16, 2006
The 2006 Performance Evaluation . . . dated February 23, 2007

reduction in force.  (*See* IRS Rep., Doc. 17, at 4.)  As noted in the background section above, the IRS conducted eight days of transcribed interviews with Mr. Semanchik in connection with its investigation and is currently seeking an unspecified number of additional interview days with him in a separate summons enforcement proceeding filed in the Western District of Pennsylvania, *U.S. v. Semanchik*, Case No. 12 CV 364 (W.D. Pa. filed March 26, 2012).

Eaton asserts in its brief opposing the IRS's enforcement petition that Mr. Semanchik has already produced to the IRS his performance evaluations for the years 2005 and 2008 in response to a summons issued to Mr. Semanchik by the IRS in his individual capacity. However, Eaton notes that, "at the same time Mr. Semanchik produced his 2005 through 2008 performance evaluations, he declined to produce earlier performance evaluations in his possession, citing privacy concerns."  (Eaton Opp., Doc. 13, at 5.)  Eaton asserts that the "evaluations Mr. Semanchik declined to produce are the same ones sought by the IRS in the present case," and, in addition, the IRS is currently seeking these same earlier performance evaluations in the enforcement proceeding filed in Pennsylvania.  (*See id.* at 6-7.)  Eaton takes the position that the IRS has not sufficiently articulated the relevance of Mr. Semanchik's performance evaluations such that Eaton must produce them in light of federal law that "[p]ersonnel records . . . should not be ordered produced upon a *compelling* showing of relevance."  (Opp. at 6, citing *Miller v. Fed. Express Corp.*, 186 F.R.D. 376, 384-85 (W.D. Tenn. 1999).)  Eaton argues that the IRS has not established any, much less "compelling," relevance here.  It argues:

> The statement in Mr. Babij's Declaration relied on by the Government that Mr. Semanchik's performance evaluations "likely contains information that sheds light on the taxpayer's pricing methodology," in addition to being unfounded,

is illogical.  Performance evaluations are a vehicle for management to communicate its opinions of employees and their job performance, as well as its expectations of the employees for the upcoming year.  There is no reason to believe that substantive information about Eaton's transfer pricing would be included in Mr. Semanchik's evaluations.  In that regard, it is telling to note that although the IRS has reviewed four of Mr. Semanchik's performance evaluations for the two tax years that were under examination, Petitioner has filed to identify any relevant information obtained from those evaluations, thus, confirming the "speculative" nature of the IRS's request.

Further, to the extent Mr. Semanchik personally has "extensive knowledge" that is relevant to this case, the IRS had more than adequate opportunity to obtain that knowledge during its eight days of transcribed interviews of him.

The information that the IRS seeks is contained, not in a former employee's performance evaluations, but rather in Eaton's transfer pricing analysis and reports which Eaton produced to the IRS during the course of the 2005 and 2006 Examination.  Eaton undertook extensive analysis of and maintained detailed reports regarding the transfer pricing of its Breaker Products.  The IRS issued comprehensive requests for these transfer pricing analyses and reports and they were, in fact provided by Eaton.

(Opp. at 9.)

The IRS disputes in its reply brief that a heightened level of relevance is necessary and argues that the performance evaluations are relevant.  The IRS submits with its reply a lengthy affidavit of IRS Agent Larry H. Gearhart explaining the IRS's investigation of Eaton. The only statements Mr. Gearhart makes in his affidavit pertinent to the relevance of the performance evaluations sought in the present summons are that Mr. Semanchik described himself as "knowledgeable" about the issues under investigation in several of the performance evaluations the IRS obtained.  Gearhart then asserts (as Agent Badij asserted) that Mr. Semanchik's evaluations for the years 2001 through 2004 "are likely to contain information about Eaton's APA, Eaton's inter-company transfer pricing, and transfers of

26

assets out of Puerto Rico . . . ."  (Gearhart Aff., ¶ 24.)

The IRS has not persuasively demonstrated the relevance of Mr. Semanchik's performance evaluations.  The declarations of Agent Babija and Mr. Gearhart on which the IRS relies, stating that other performance evaluations for Mr. Semanchik indicate that Mr. Semanchik professes knowledge about the tax issues under investigation, do not indicate that Mr. Semanchik's performance evaluations actually contain any substantive information as to Mr. Semanchik's "knowledge."  Significantly, the IRS does not dispute Eaton's assertion in its opposition brief that the IRS has failed to identify any relevant information obtained from the IRS's review of other performance evaluations for Mr. Semanchik.

On the other hand, Eaton has persuasively demonstrated that the IRS's position is purely speculative that the performance evaluations sought "are likely to contain information" about Eaton's transfer pricing.  The IRS has come forward with no reason to indicate that the performance evaluations sought contain relevant substantive information.  Furthermore, as Eaton persuasively argues, there is no need for the IRS to pursue such a speculative avenue of discovery to learn of Mr. Semanchik's "knowledge" (by seeking Mr. Semanchik's performance evaluations) because the IRS has had the opportunity during its extensive investigation to interview Mr. Semanchik personally (for eight days) about his knowledge, and the IRS obtained the non-privileged materials contained in Mr. Semanchik's files and binders in connection with other discovery requests.

The petition for enforcement of the summons in 12 MC 26 is denied.  The summonsed performance evaluations of Mr. Semanchik for the years 2001 through 2004 have not been shown to be relevant to a legitimate purpose.

**Conclusion**

For the reasons discussed above, the government's petition for enforcement of the summons in Case No. 12 MC 24 is granted, but the government's petitions for enforcement of the summonses in Case Nos. 12 MC 25, 12 MC 26, and 12 MC 27 are denied.

IT IS SO ORDERED.


　　　　　　　　　　　　　　　 /s/Patricia A. Gaughan
　　　　　　　　　　　　　　　PATRICIA A. GAUGHAN
Date:  8/15/12 　　　　　　　United States District Judge